## In the Court of Common Pleas of Butler County.

### BIRD *v.* SHIRK.

Where a sheriff makes sale on a fi. fa., of leasehold property subject to mechanics' liens, and pays over the money to the fi. fa. creditors on the day of sale, or at any other time before the return day of the writ, he is liable to mechanics' lien creditors for claims filed after the return day, if in other respects within time. The sheriff is presumed to know the law, and is bound to take notice of such claims from the nature of the property sold, and if he misappropriates the money derived from such sale, he is liable to mechanics' lien creditors.

**Exception to auditor's report of distribution of proceeds of sheriff's sale.**

Opinion delivered, April 28, 1874, by

McGUFFIN, P. J.   This controversy arises upon the distribution of the proceeds of a sheriff's sale of a leasehold and oil well, and all the necessary machinery appurtenant thereto. The money was paid over by the sheriff upon the day of sale, and before the return day of the writ, to the fi. fa. creditor, who was also the purchaser at the sale. The auditor appropriated the money to the judgment of Ephraim Tucker, whose claim was for work and labor done for the defendant in drilling the well, which commenced before the entry of the judgment and issuing of the scire facias and was completed on the day after the sale on said writ. The lien was not filed of record until the 10th of June, 1873. The work commenced on the 12th of August, 1872, and was continuously pursued until completion on the 13th of March, 1873. The sale was made on the 12th of March, 1873, and the money paid over by the sheriff on the same day. The return of the writ was not made for nearly two months thereafter. The auditor finds the claim of Tucker to be regular and just, and that no allegation of fraud attached thereto, and that no objections to any irregularities in the proceedings were raised by the defendant, and that a judgment was obtained in open court for the amount of his demand upon his mechanics' lien filed, and that thereby he has a lien upon the fund arising from the sale of the premises by virtue of his prior lien for his labor. It is, therefore, claimed that the sheriff misapplied the funds in appropriating the money to the fi. fa. creditor, that he was too hasty in making payment

and disobeyed the command of the writ before the return day thereof. The answer is—the sheriff had no claim of notice upon the claim of Tucker, as it did not appear of record, and to compel him now to answer would work injustice to him, and that the auditor erred in his report in appropriating the funds to the claim of Tucker. There can be no doubt that the lien began on the 12th of August, 1872, and the work was continuously carried on until the 13th of March, 1873. The claim was complete at that time, and although no record thereof was filed in court until the 10th of June, 1873, still under the act of assembly, the lien was preserved in full force on the 12th day of March, 1873, at the time of sale, the law providing that he had three months after the last work was done in which to file his lien. This is conceded, but the sheriff, it is alleged, had no proper notice of the claim, there being nothing on file to show the demand, and therefore he can only look to the record in making distribution. The case, then, depends on the question of notice. We may remark we entertain the opinion that this presents one of those continuing liens, and like some other liens under the act of assembly, which the sheriff, from their nature, is bound to notice, and something like the lien of a mechanic for work and labor done on a chattel, which the sheriff cannot levy upon and carry away without securing the lien of the workman for his labor. The law fixes the lien for the protection of the laborer. The sheriff is bound to know the law, and is presumed to understand it. The law fixes a lien for the protection of the laborer from the inception of his work until its completion and for three months thereafter. 10 Harris, 491; act of assembly, 18th of April, 1868, and supplements thereto. He has evidence before his eyes, when he goes upon the premises to levy, and every hour of labor creates a right of lien. He also knows that the mechanic is not bound to file his lien for three months after his work is completed, and when he sees the work progressing, it is notice to him of the claim which may be filed and can be filed, and for which demand in judgment, he may be called upon to appropriate the proceeds of the writ. The mechanics' lien law in western Pennsylvania, was passed for the very purpose of securing the mechanic and workman who labors upon an oil well, and to facilitate the development of the oleaginous product in the country. The sheriff of Butler county knows these facts as well as any other man in the county, but, aside from his general knowledge thereof, the sheriff in this case had notice of *the fact* of the drilling going when he made the levy in this case; for the levy endorsed upon the writ is in these words: "Levied upon all the right, title, interest, and claim, &c. —describing the land by its boundaries—and an oil well being drilled thereon, together with all the machinery and fixtures," &c. He, therefore, had knowledge sufficient to put him on his guard, to prevent him paying out the money, and to induce him to bring the same into court for a legal distribution thereof. If he will not take such notice, he proceeds at his

peril. Of course he takes all the consequences of his acts. In this case, however, he cut off all opportunity from the party to take such steps as would protect him, having paid the money out two months before the return day of the writ, without waiting any action of the court with reference to its application. 9 Barr, 267. We see no reason why the money should not be applied to the judgment of Tucker. If there has been any irregularity in obtaining the judgment, that is a matter for the defendant who makes no objections given to us. It is not the judgment that gives the lien, but it is the labor performed; and the lien by law arises therefrom. This may be considered a hard rule and inconvenient in practice, and imposes more duties upon the sheriff than are just. It must be remembered that the sheriff is bound to obey the command of the writ. He is required after sale to return the same and the money into court, and not to pay it to the plaintiff named in the writ, so that the rights of others may be protected. When he undertakes to go beyond this, he does so at his risk. I am aware that it is customary often so to do, but it is always at his peril. Here the sheriff has a writ for $3,600, takes a levy of everything he finds belonging to the defendant, and knows the result would be an entire sale of the property.

At the time he levied he found Tucker at work drilling on the well, on the 5th and on the 12th, seven days intervening, at the rate of $4 00 per day. He knew Tucker had a lien to the extent of $2,800 at least, yet he sells the well and all the property, receives his costs, and pays over the residue to the plaintiff, thereby divesting all claims upon the well, and leaves the driller to look after the defendant not only for the amount previously earned, but that which he earned between the day of levy and sale. Where is the protection to the driller? This the sheriff knew was the result. These are the facts his attention was called to, because the law created the daily lien and said to the sheriff: You must apply the proceeds of your writ to the extent of the money due the driller, because his lien is older than your writ and levy. It is true he might reply; there may be nothing due him; he may have been a partner of the defendant; there may be nothing due at the time of levy. These inquiries may create doubts and controversies. These very inquiries we hold should have compelled the sheriff to refuse to pay the money to the plaintiff. and thus he would have compelled the driller to see the sheriff and his sureties and drive him into unnecessary litigation. Still that would not divest the lien upon the fund, but he is entitled to the proceeds to the extent of his claim. As we look at it, to hold any other rule would put workmen who rely upon their lien to great hazard, and place them without protection, and, hence, we are satisfied the conclusion of the auditor is correct, and without citing other authorities in support of the position taken by him, we confirm the report.

By the court.